UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BAHA ABDALLAHI,

Petitioner,

v.

MATTHEW PUTRA et al.,

Respondents.

Case No. 1:26-cv-2690

Honorable Hala Y. Jarbou

**OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action by filing a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will deny Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

## I. Procedural History

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, *inter alia*, accept jurisdiction over this action and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Pet., ECF No. 1, PageID.17–18.)

In an order entered on September 30, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 3.) Respondents filed a notice that 8 U.S.C. § 1231

governed Petitioner's detention, (ECF No. 4), and filed their response on October 19, 2026, (ECF No. 7.)

## II. Relevant Factual Background

Petitioner is a native and citizen of Mauritania. (Notice to Appear (NTA), ECF No. 1-2, PageID.23.) Petitioner entered the United States on or about August 25, 2024, and was issued a Form I-862, NTA, charging Petitioner with inadmissibility under § 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA) on September 11, 2024. (*Id.*) DHS then released Petitioner into the United States. (Resp., ECF No. 7, PageID.50.)

On January 6, 2026, ICE took Petitioner into custody at a scheduled check-in appointment. (*Id.*) On March 6, 2026, the Detroit Immigration Court ordered Petitioner "removed to Uganda under the Asylum Cooperative Agreement (ACA), or in the alternative to Mauritania." (*Id.*; Pet., ECF No. 1, PageID.7; Wynns Decl. ¶ 7, ECF No. 7-1, PageID.60–61.) "Both parties reserved appeal of this decision," but no appeal was filed. (*Id.*, PageID.61; Pet., ECF No. 1, PageID.7; Resp., ECF No. 7, PageID.50.) "On May 19, 2026, [Petitioner] was manifested for an ACA removal flight to Uganda. . . . [and o]n May 20, 2026, ERO Detroit was notified that the charter removal flight had been cancelled." (Wynns Decl. ¶¶ 8–9, ECF No. 7-1, PageID.61.) Petitioner was issued a Decision to Continue Detention on June 30, 2026, which states, in part, that "ICE is in possession of a valid passport and expects to effectuate your removal from the United States in the reasonably foreseeable future." (ICE Decision, ECF No. 7-2, PageID.65.)

Then, "[o]n August 5, 2026, ERO Detroit scheduled [Petitioner] for a commercial removal flight to Mauritania on August 26, 2026." (Wynns Decl. ¶¶ 12, ECF No. 7-1, PageID.61.) Petitioner had some medical issues, but was medically cleared for travel on August 21, 2026; however, the "removal mission was cancelled" on August 25, 2026. (*Id.* ¶¶ 13–15.) "[T]he medical staff [at North Lake Processing Center then] stated that [Petitioner] should not fly until after his

follow-up appointment [on an unspecified date.]" (*Id.* ¶ 15.) Subsequently, Petitioner was admitted to a hospital for seizure activity on October 1, 2026, and has since been "medically cleared for removal." (*Id.* ¶ 17, 20, PageID.62.)

## III. Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## IV. Merits Discussion

The parties agree that Petitioner is subject to a final order of removal. (Resp., ECF No. 7, PageID.52; Pet., ECF No. 1, PageID.7.) Therefore, Petitioner's present detention is governed by Section 1231 of Title 8. However, Petitioner contends that his detention is unlawful and violates the Due Process Clause of the Fifth Amendment. (Pet., ECF No. 1, PageID.12–16.) In response, Respondents argue that because Petitioner "has not been in post-final removal order custody for more than six months on the date the petition is filed, [then] his detention is presumptively lawful" under *Zadvydas v. Davis* 533 U.S. 678, 700–701 (2001). (Resp., ECF No. 7, PageID.54.)

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Here, Petitioner's order of removal became

final on April 6, 2026.[1] The 90-day removal period following the order expired well before Petitioner filed the present action. *See id.* § 1231(a)(1) ("The [90-day] removal period begins on . . . [t]he date the order of removal becomes administratively final.").

In *Zadvydas v. Davis*, the Supreme Court held that after expiration of the 90-day removal period, the Government may continue to detain the noncitizen for a "presumptively reasonable period" of time, which the Supreme Court concluded equaled six months. *See Zadvydas*, 533 U.S. at 701. Following that six-month period, "once [a noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*[2] "[O]nce [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

Here, Petitioner filed this action on September 25, 2026, less than six months after his order of removal became administratively final. "Although the Supreme Court established a six-month period of presumptively reasonable detention," courts have found that *Zadvydas* does "not preclude a detainee from challenging the reasonableness of his detention before such time." *See, e.g.*, *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 395–96 (D.N.J. 2025) (citing, *inter alia*, *Zadvydas*, 533 U.S. at 699–701; *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 706–07 (S.D. Tex. 2020); *Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 994 (C.D. Cal. 2018)); *Ali v. Dep't of*

---

[1] The order of removal was issued on March 6, 2026, and "[b]oth parties reserved appeal of this decision," but no appeal was filed, making the order administratively final on April 7, 2026. (Wynns Decl. ¶ 7, ECF No. 7-1, PageID.60–61); *see* 8 U.S.C. § 1101(a)(47).

[2] The Court notes that the Supreme Court recently held that § 1231(a)(6) does not require the "Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022). The Court, however, did not reach Arteaga-Martinez's constitutional or *Zadvydas* claims, concluding that such claims were not properly before the Court. *See id.* at 583–84.

*Homeland Sec.*, 451 F. Supp. 3d 703, 707 (S.D. Tex. 2020) ("This six-month presumption is not a bright line, however, and *Zadvydas* did not automatically authorize all detention until it reaches constitutional limits." (citations omitted)). That is, during the six-month period of detention, "[t]he presumption of reasonableness is the default," and "the government bears no burden to justify detention," "but if a person 'can prove' that his removal is not reasonably foreseeable, then he can overcome that presumption." *Id.* at 397 (citations omitted).

In this case, Petitioner contends that his deportation is "not reasonably foreseeable," because "ICE has shuttled [Petitioner] back and forth across the country" at least three times in the last five months and Petitioner has "fully cooperated with ICE" with regards to his removal. (Pet., ECF No. 1, PageID.8.) However, Petitioner provides the Court with no facts that would suggest that that "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Petitioner's assertion, without more, is insufficient to meet Petitioner's burden to "prove" that Petitioner's deportation is not reasonably foreseeable.

Furthermore, at the time of the issuance of this opinion, Petitioner has been detained for more than six months after the entry of his final order of removal. Following that six-month period, if "[a noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* Even if the Court assumes, without deciding, that Petitioner has shown there is no significant likelihood of removal, Respondents indicate there have been two scheduled, albeit cancelled, removal flights and that Petitioner was recently medically cleared for removal, (Wynns Decl. ¶¶ 8, 9, 12, 17, 20, ECF No. 7-1, PageID.61–62.), suggesting that, at this time, Petitioner's removal is reasonably foreseeable.

Accordingly, at this time, the Court will deny Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

## Conclusion

For the reasons discussed above, the Court will enter a judgment denying Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

Dated: November 6, 2026

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE